Frederick ALLEN and Timothy Allen, minors, by W. George Allen, father and next friend, and Von D. Mizell, President of the National Association for the Advancement of Colored People, and all others similarly situated, Plaintiffs,

v.

BOARD OF PUBLIC INSTRUCTION OF BROWARD COUNTY, FLORIDA, a public body organized and existing under the laws of the State of Florida, and William C. Drainer, Superintendent of Public Schools of Broward County, Florida, Defendants.

No. 70–31–Civ.–TC.

United States District Court,
S. D. Florida.

Jan. 22, 1970.

Opinion April 30, 1970.

W. George Allen, Fort Lauderdale, Fla., for plaintiffs.

William M. O'Bryan, Fort Lauderdale, Fla., for defendants.

Thomas A. Thomas, Hollywood, Fla., for intervenors Thomas.

Arthur Seppi, Fort Lauderdale, Fla., for intervenors Grant.

Edgar G. Hamilton, West Palm Beach, Fla., for intervenors Blanche Ely P.T.A., parents and educators.

**1128**

## ORDER

CABOT, District Judge.

This school desegregation suit was brought by the father of two students and by the president of the Broward County Chapter of the National Association for the Advancement of Colored People against the Board of Public Instruction and the School Superintendent of Broward County, Florida, who operate an urban school system of 116 schools and more than 112,000 students. Jurisdiction vests in the court under Title 28, U.S.C. § 1343(3), and Title 42, U.S.C.A. §§ 1983 and 1985.

Hearing was held on January 16, 1970, on the application of the plaintiffs to restrain the defendants from maintaining a dual system of public schools segregated by race and to compel them to formulate and operate a unitary integrated system of public schools. The court has considered the testimony, documentary proofs and advices of counsel.

The defendants have admitted and the court finds that the defendants are not operating a unitary integrated school system but are operating a dual system of public schools segregated by race contrary to recent decisions of the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. Alexander v. Holmes County Board of Education, October 29, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19; United States v. Hinds County Board, 5 Cir., November 7, 1969, 423 F.2d 1264; Singleton v. Jackson Municipal Separate School System (and consolidated cases en banc), 5 Cir., 1969, 419 F.2d 1211, as modified by the United States Supreme Court in Carter v. West Feliciana Parish School Board and Singleton v. Jackson Municipal Separate School District, 1970, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477.

*Alexander* supervened all authority to the contrary, sent the doctrine of deliberate speed to its final resting place, and adopted the principle of "immediacy" with respect to the time allowed to establish a unitary school system. *Single-ton* specifically provided that the "immediacy" doctrine must be applied in "these and all other school cases now being or which are to be considered in this or the district courts of this circuit."

Thus the principles established in the authorities cited apply to this case although the case was not filed until January 9, 1970, and the first hearing held January 16, 1970. The court finds that the summary of a plan for establishing a unitary system, which was prepared by the School Board [Plaintiffs' Exhibit 1], is not in sufficient detail to enable the court to determine its efficacy to establish a unitary system. The parties have agreed that the Board shall have until February 16, 1970, to file a suitable plan and that a hearing on objections to the plan may be held by the court on March 3, 1970. The court finds these periods of time to be the minimum needed for the purposes prescribed. No other plan exists which might be sooner adopted to establish a unitary system.

The Board advised that they had earlier consulted with the Office of Education of the United States Department of Health, Education and Welfare, and with the State Department of Education, as well as having some contact with the Florida School Desegregation Consulting Center, School of Education, University of Miami, in attempting to formulate a suitable plan for establishing a unitary system. The court suggests that the Board further avail itself of their expertize and especially that of the Florida School Desegregation Consulting Center.

Accordingly, it is ordered and adjudged that:

### I.

Effective immediately the defendants may no longer operate a dual system based on race or color and are to operate henceforth subject to the terms hereof "as a unitary school system within which no person is 'effectively excluded from any school because of race or color.'" United States v. Hinds County Board, *supra*, at 1267.

## II.

To effectuate the conversion to a unitary school system the defendants shall file with the court by February 16, 1970, a comprehensive plan to establish a unitary school system as set forth in the cases cited heretofore. Three copies shall be filed with the court and a copy furnished simultaneously to counsel for plaintiffs. The plan should include all details necessary to enable the court to test its efficacy to establish a unitary school system under the cited cases, and should include the following:

1. Charts showing student population by school, grade, and race, collected separately as to elementary schools, junior high or middle schools, and senior high schools.

2. Charts showing student population, current and proposed, by race and school, including totals and percentage of Blacks.

3. Charts showing school building capacities, permanent and portable, current and proposed.

4. Charts showing racial composition of instructional staff (faculty), current and proposed, collected separately as to elementary, junior high or middle, and senior high, including totals and percentage of Blacks.

5. A program of staff support or in-service training for orientation of faculty and other staff.

6. Criteria for establishing faculty and other staff eligibility for involuntary transfer between schools and for selecting faculty or other staff to be demoted or dismissed, if that should prove to be unavoidable.

7. Description of boundaries for attendance zones applying to each school.

8. Description of changes in transportation system.

9. A plan for establishing integrated athletic and other activity programs.

10. A pupil locator or spot map showing residential locations of the school pupils.

11. Timetable for implementation of the proposed plan. If any substantial delay is proposed in effectuating any phase of the plan, state the justification therefor.

## III.

A hearing on objections to the plan will be held before the court on March 3, 1970, at 10:00 A.M.

### FINDINGS OF FACT, CONCLUSIONS of LAW and FINAL JUDGMENT

### OPINION

### FINDINGS OF FACT

CABOT, District Judge.

This school desegregation suit was brought by the father of two public school students and by the president of the Broward County Chapter of the National Association for the Advancement of Colored People against the Board of Public Instruction and the School Superintendent of Broward County, Florida, alleging, inter alia, denial of equal protection under the Fourteenth Amendment to the United States Constitution. The defendants operate an urban school system of 116 schools and more than 112,000 students on the Florida "Gold Coast." The school system is growing at a high rate (8.1% from September, 1968, to September, 1969), consistent with the growth of the county, which is said to be the fastest growing major county in the nation. Jurisdiction vests in the court under Title 28 U.S.C. § 1343(3) and Title 42 U.S.C. §§ 1983 and 1985.

The suit was filed on January 9, 1970, and the first hearing was held on January 16, 1970, on the application of the plaintiffs to restrain the defendants from maintaining a dual system of public schools segregated by race and to compel defendants to formulate and op-

erate a unitary integrated system of public schools.

This is the third such suit filed against the school board in this court, though the two earlier suits resulted in nothing definitive. One, styled Gay v. Board of Public Instruction of Broward County, No. 67–725–Civ–CA, was dismissed on March 10, 1969, by consent of the parties, prosecution of the suit having languished. The other, styled Hattie Hall, etc., v. Board of Public Instruction of Broward County, No. 10,820–Civ, was filed June 16, 1961, and dismissed June 13, 1962.

At the January 16, 1970, hearing in this cause, the defendants admitted and the court found by its order of January 22, 1970, that they were not operating a unitary integrated school system but were operating a dual system of public schools segregated by race. Such dual systems, organized and operated by the states acting through local school boards, were held unconstitutional by the Supreme Court in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (Brown I), and which were ordered abolished in Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (Brown II).

In Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed. 716, the Supreme Court, speaking of the whole school system, stated that to convert from a dual system to a unitary, non-racial system, the racial identification of the schools must be eliminated in six particulars; composition of student bodies, faculty, staff, transportation, extra-curricular activities, and facilities.

The Supreme Court then, in Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, further defined the constitutional standard of a unitary system, against which every school system is to be measured, as one "within which no person is to be effectively excluded from any school because of race or color."

This court then directed the defendants to operate henceforth a unitary school system and to file with the court by February 16, 1970, a comprehensive plan to establish such a system as defined in the cases cited above and in Singleton v. Jackson Municipal Separate School System (and consolidated cases in banc), 5 Cir., 1969, 419 F.2d 1211, as modified by the United States Supreme Court in Carter v. West Feliciana Parish School Board (and consolidated cases), 1970, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477.

## SCHOOL BOARD PLAN

The school board timely filed its plan (Defendants' Exhibit 1), which was to be totally implemented by June 15, 1970, after the close of the current school year, but with an orientation program, etc., to begin immediately. The plan shows that the board had launched a program in 1968, for completion by 1973, calling for desegregation of all high schools and probably all junior high and middle schools, with the elementary schools to remain as neighborhood schools. All junior highs were to be converted to middle schools, with the ninth grades moving from junior high schools to high schools and the sixth grades from elementary schools to middle schools as space became available.

BUILDING PROGRAM. The program was to be activated over a five year period because that time was deemed necessary to complete a $155,000,000 qualitative improvement program of site acquisitions, new school plants, remodeling of existing plants, new equipment, etc. The principal funding source was a $108,600,000 general obligation bond issue voted by the electorate of the county in 1968. This is said to be the largest single school bond issue ever approved in the southeastern United States. Substantial progress has been made on the building program and completion should be well within the scheduled period.

CURRENT STUDENT POPULATION. The school system is presently composed of 116 schools, eleven being high schools, of which two have all-Black student bodies, 21 are junior highs or

middle schools, of which two are all-Black, and 84 are elementary schools, of which 13 are all-Black. In addition to these 17 all-Black schools, five others are 99% or more Black. The student composition is:

| | White | Black | Total | % Black |
|---|---|---|---|---|
| Elementary | 43,114 | 15,309 | 58,423 | 26.2 |
| Middle or Junior High | 21,953 | 4,607 | 26,560 | 17.3 |
| Senior High | 21,456 | 5,585 | 27,041 | 20.7 |
| Totals | 86,523 | 25,501 | 112,024 | 22.8 |

HIGH SCHOOLS. The board plan calls for the elimination of the two all-Black high schools, Blanche Ely and Dillard, and the integration of all remaining high schools with a maximum of 27.4% Black pupils at any high school. For the current year there is only one all-White high school—Plantation High.

MIDDLE/JUNIOR HIGH SCHOOLS. All middle schools and junior high schools are to be desegregated, with the exception of Apollo Middle School which is far removed from Black residential areas. Sixth grade centers would be established at Attucks and Lanier Schools, to pair with Olsen and McNicol Middle Schools, respectively. A maximum of 31.4% Black pupils is proposed at any school, with the sixth grades being transferred to middle schools or left in elementary schools, depending on availability of space. For the current year there are two all-Black and four all-White middle and junior high schools.

ELEMENTARY SCHOOLS. The school board presently operates a neighborhood system of 84 elementary schools, of which 13 have all-Black student bodies and 35 are all-White. Its proposed plan calls for desegregating three of the all-Black schools, with ten remaining all-Black and four others over 90% Black.

INSTRUCTIONAL STAFF. For the current year all schools except three have one or more White teachers, but 42 schools have no Black teachers. The board plan calls for desegregating instructional staffs in every school in the approximate White to Black ratio that they bear to each other in the system as a whole. Each elementary school will have an instructional staff composed of 25% Black and 75% White, and the secondary schools will be composed of 20% Black and 80% White. (Board Plan Addendum # 4).

PUPIL REASSIGNMENTS. The pupil transfer policy proposed by the school board has two provisions:

1. Once the initial assignments are made, any student with parental consent may request reassignment to any school within the school system. The request will not be denied for any reason other than lack of capacity in the school to which reassignment is requested. Any student granted reassignment will be responsible for his own transportation.

2. Transportation will be provided for any student granted reassignment from a school in which he is in the racial majority to the nearest school in which he is in the racial minority.

OTHER PROVISIONS. The plan also details a thoroughgoing orientation program to prepare the instructional staff, pupils, and the public for the desegregation program (Addendum # 5). Criteria for establishing faculty and other staff eligibility for transfer between schools brought about by the desegregation program are included (Addendum # 6). The current status and projections with respect to transportation (Addendum # 8) are included, but they are not in such form as to be readily evaluated, presumably due to the short time

allowed for preparation of the plan. No issue is raised as to transportation. The status of integration in athletics and other activities is included. (Addendum # 9).

## OBJECTIONS TO BOARD'S PLAN

The court heard objections to the board's plan on March 3, 1970, and granted leave to intervene to attorneys Thomas A. Thomas and Arthur Seppi, who represented certain students and parents of students who objected to limited portions of the board plan. Subsequently, leave to intervene was granted to attorney Edgar G. Hamilton, who objected on behalf of Blanche Ely P.T.A. and others to elimination of Blanche Ely High School.

The plaintiffs objected to many facets of the board plan including (1) phaseout of all-Black Blanche Ely High School and Dillard High School, since the student capacity is needed to reduce overcrowding in adjacent high schools; (2) use of all-Black Attucks and Lanier Middle Schools for sixth grade centers, because each could be more suitably used for the conventional middle school alignment of grades 6, 7 and 8; (3) retention of all-Black and all-White elementary schools as not meeting the unitary standard; (4) reassignment procedures, since they would serve to overcrowd certain schools, increase transportation and frustrate the desegregation process; (5) increased bussing of Black students to predominately White schools while providing for little bussing of White students to predominantly Black schools, thus showing that if bussing is a problem, it is a Black problem; (6) assignment of faculty on a uniform standard for every school, whereas the faculties of predominantly Black schools should be predominantly Black; (7) delay of implementation of the plan, particularly transfer of faculty, until September, 1970.

The court by its order of March 3, 1970, directed the board to consult with the Florida School Desegregation Consulting Center, School of Education, University of Miami, Miami, Florida, a federally funded agency under the Civil Rights Act of 1964, in developing additional information by which to measure the Broward County School Desegregation Plan as to its meeting the constitutional standard of a unitary system. The Center was requested to make a report with recommendations to the court designed to meet the unitary standard.

## INTERIM IMPLEMENTATION OF PLAN

In the interim the court directed the school board and school superintendent by its order of March 19, 1970, to continue to implement the proposed faculty transfer and orientation plans and to take all reasonable and necessary steps looking to the prompt implementation of an appropriate school desegregation plan for the Broward County schools so that there would be no unnecessary delay in full implementation of the plan once finally approved.

## CONSULTING CENTER'S DE-SEGREGATION STUDY

The Florida School Desegregation Consulting Center's study (Court's Exhibit 1) was timely filed with the court. The professional educators who authored the study expressed the view that the school board plan "makes considerable progress toward desegregation and a unified school system and toward the goal of providing an equal educational opportunity for all children in the system." The Center recommends:

## HIGH SCHOOLS.

Blanche Ely High School be discontinued as a high school and made a sixth grade attendance center for the Pompano Beach Middle School. As shown by the detailed report (Appendix III of Court's Exhibit 1) the school is deficient in every area except physical education and is not a reasonably good secondary school facility.

Dillard High School not be discontinued but utilized as a desegregated senior high facility in 1970–71, the report in-

dicating it is an adequate high school facility (Appendix IV of Court's Exhibit 1).

## MIDDLE SCHOOLS.

Wherever possible the shift be made to the middle school structure (grades 6–8). The board's proposed middle school pairing of Attucks (grade 6) with Olsen (grades 7 and 8) and of Lanier (grade 6) with McNicol (grades 7 and 8) be implemented.

Blanche Ely Sixth Grade Center be established in the present Blanche Ely High School plant for the Pompano Beach middle school attendance area. All sixth grade students be moved to the Center from seven elementary schools (Coleman, Cresthaven, Cypress, Markham, Palmview, Pompano Beach, and Sanders Park), resulting in 455 White students and 334 Black students, or a total of 789 students in the Center, which would be 42% Black.

## ELEMENTARY SCHOOLS.

The school system should submit new attendance zones which would eliminate as many all-Black elementary schools as possible. As an alternative, in the event rezoning is not productive, the following was recommended:

*Coleman Elementary.* To be phased-out, with sixth grade students reassigned to Blanche Ely Sixth Grade Center, and the remaining students reassigned to Pompano Beach, Cypress, Palmview, and Sanders Park by adding portions of Coleman's attendance area to the appropriate other schools.

*Pairing.* The sixth grade pupils in the remaining all-Black elementary schools be assigned to the appropriate middle schools, and the following schools be paired:

Sanders Park and Palmview attendance areas be combined, grades K–2 attending Palmview, and grades 3–5 attending Sanders Park, each school becoming 62.1% Black.

Drew and Coconut Creek attendance areas be combined, grades K–2 attending Coconut Creek and grades 3–5 attending Drew, resulting in each school becoming 55.4% Black.

Dillard and Lauderdale Manors attendance areas be combined, grades K–2 attending Lauderdale Manors and grades 3–5 attending Dillard, resulting in each school becoming 54% Black.

Larkdale and Lauderhill attendance areas be combined, grades K–2 attending Lauderhill and grades 3–5 attending Larkdale, resulting in each school becoming 58.8% Black.

Lincoln Park and Riverland attendance areas be combined, grades K–2 attending Lincoln Park and grades 3–5 attending Riverland, resulting in each school becoming 57.3% Black.

Sunland Park and North Side attendance areas be combined, grades K–2 attending Sunland Park and grades 3–5 attending North Side, resulting in each school becoming 53.7% Black.

Walker and East Side attendance areas be combined, grades K–2 attending East Side and grades 3–5 attending Walker, resulting in each school becoming 60.9% Black.

Carver Ranches, Lake Forest, and Watkins attendance areas be combined, grades K–1 attending Lake Forest, grades 2–3 attending Carver Ranches, and grades 4–5 attending Watkins, resulting in each school becoming 44.3% Black.

Collins and Dania attendance areas be combined, grades K–2 attending Collins and grades 3–5 attending Dania, resulting in each school becoming 55% Black.

C. A. Moore, Colbert, and Hallandale attendance areas be combined, grades K–1 attending Colbert, grades 2–3 attending Hallendale, and grades 4–5 attending C. A. Moore, resulting in each school becoming 49.4% Black.

## INSTRUCTIONAL STAFF.

The board plan for desegregation of instructional staff is based on educational factors and teacher-board concerns and follows usual procedures. Provisions should be made for more than one Black administrator in any elementary

school. The board should develop an aggressive recruitment and training policy to make available more Black administrators.

### TRANSFER POLICY.

The two provisions of the board's plan for reassignment of students be eliminated and the usual majority to minority transfer policy established.

### BI-RACIAL COMMITTEE.

A committee be established to review operation of the transportation system, pupil transfer policies and school site selections.

### OBJECTIONS TO CENTER'S REPORT

Objections to the Center's recommendations were filed by the defendants school board and school superintendent and by intervenor Thomas, who also filed a separate petition to establish a unitary school system. Hearing on the objections and on the intervenor's petition were combined with the final hearing and was held before the court on April 3, 1970.

The school board objected to the recommendation of the Center that the all-Black elementary schools be desegregated largely through pairing with all-White or predominantly-White schools and stated a preference for the Center's alternate recommendation of rezoning the schools' attendance zones. The board expressed the tentative view that most of the Black elementaries could be desegregated by rezoning but that additional time would be needed to prepare such a plan. The board objected to the Center's recommendation as to all-Black Dillard and Blanche Ely High Schools, but offered to re-examine its position in the light of the Center's recommendations.

Plaintiffs made no objection to the report of the Center and particularly approved the pairing plan for desegregation of the Black elementary schools.

Intervenors Thomas objected to the Center's pairing and other pupil desegre-

gation recommendations and urged adoption of a neighborhood school system subject to majority to minority transfers. The plaintiffs expressed the view that adoption of such a plan would result in little desegregation and would not establish a unitary system.

Intervenors Grant, represented by attorney Arthur Seppi, approved generally of the school board plan and sought minor boundary changes in an attendance area. The school board indicated agreement and that the adjustments would present no substantial problem.

Attorney Edgar Hamilton, representing educators and parents in the area of Blanche Ely High School, expressed their desire to have that school remain as a high school.

The court then directed the school board to furnish additional information, including new pupil attendance areas designed to desegregate the all-Black elementary schools.

### AMENDMENTS TO SCHOOL BOARD PLAN

Amendments (Defendants' Exhibits 2 and 3) to the school board plan of February 16, 1970, were subsequently filed in response to the court's direction, though the amendments were not specifically recommended by the board. These amendments provide:

### HIGH SCHOOLS.

Dillard High School is retained for the 1970–71 school year as a desegregated high school by expanding the boundaries of the present attendance area. Only students in grades 9 and 10 from the expanded attendance area will attend Dillard in 1970–71, students in grades 11 and 12 to remain in the high schools which they are now attending.

### MIDDLE SCHOOLS.

Lanier and McNichol, originally paired, have been changed to complete middle schools by separating the attendance areas.

## ELEMENTARY SCHOOLS.

Changes in boundaries of the all-Black elementary schools result in desegregating most of these schools. The attendance areas of the remaining all-Black elementaries are surrounded by other Black attendance areas, or by major traffic impediments (railroads, busy highways).

## REASSIGNMENT PROCEDURES.

1. Any pupil, with parental consent, shall have the right to transfer from a school at which his race is in the majority to the next nearest school at which his race is in the minority and the board shall furnish free transportation provided the distance involved meets state transportation statutes.

2. Other reassignment requests will be considered providing the request does not involve the transfer of a pupil in which his race is in the minority to a school in which his race is in the majority.

## OTHER.

The board will submit nominees for a bi-racial committee for site acquisition and school construction.

Administrators will be assigned to elementary schools without regard to race.

An aggressive program of recruiting and training Black administrators for the central office staff will be instituted.

## A UNITARY SYSTEM

Measured against the frame of reference established by the cases earlier cited, and bearing in mind that each school system must be considered separately on its own facts, it is apparent that the school board plan establishes a unitary system of public schools in all respects, except as to (1) a portion of the student desegregation plan, (2) the pupil reassignment provisions, and (3) certain limitations on Black administrators.

■ The board's plan to desegregate its instructional staff in each school in the same approximate proportion as White staff members bear to Blacks in the whole system, which is objected to by plaintiffs, comports with the requirements of law. Singleton v. Jackson Municipal Separate School District, *supra*.

## STUDENTS

HIGH SCHOOLS.

■ *Dillard*. The proposed closing of this high school and transferring the students to Fort Lauderdale, Northeast, Plantation, and Stranahan High Schools, all of which are facing extended sessions to relieve overcrowding in 1970–71, places an unnecessary burden on these schools. Dillard is an adequate high school facility as shown by the study of the Florida School Desegregation Consulting Center (Appendix IV of Court's Exhibit 1). The April 13, 1970, amendments to the school board plan (Defendants' Exhibit 2) show that Dillard will provide for 2,038 students, 1160 Black and 878 White, as a desegregated facility by expanding the attendance area. This use will reduce transportation requirements. The proposal to close Dillard appears to be based solely on the reluctance of the school board to require White students to attend school in Black areas. This is not a sufficient reason within the context of the factual situation here presented. It follows that Dillard should be operated as a desegregated high school for 1970–71.

*Blanche Ely*. This is *not* a reasonably good high school facility, being deficient in every area, excepting physical education (Appendix III of Court's Exhibit 1). Adjacent high schools are not overcrowded and can adequately accommodate the Blanche Ely students. Therefore the board's plan to eliminate Blanche Ely as a secondary school is acceptable. The board has plans to build a new high school to serve the area. For the 1970–71 school year the Blanche Ely plant will be used to house Coleman Elementary students.

With Dillard operated as a desegregated facility, all high school students will be attending integrated schools in 1970–71.

MIDDLE/JUNIOR HIGH SCHOOLS.

*Blanche Ely Sixth Grade Center.* The proposed use for the Blanche Ely high school plant in the Desegregation Consulting Center study, and also in the school board amendments of April 13, 1970, is as a sixth grade center, though the boundaries in the two plans vary in certain details, and would take sixth grade students from the Pompano Beach Junior High School attendance area. This plan calls for a substantial increase in transportation and additional walking of students and does not appear necessary since there is sufficient space in the respective elementary schools to retain the sixth grades. The school board plans to build a suitable middle school for the Pompano Beach area to house the sixth, seventh and eighth grades, since Pompano Beach Junior High School is inadequate both as to the condition of the school and as to overcrowding.

██ If the sixth grade students are left in their respective elementary schools (Coleman, Cresthaven, Cypress, Markham, Palmview, Pompano Beach, Sanders Park), all will be in desegregated schools, though the percentage of Black students will vary substantially. If the sixth grade students were moved to a center as proposed, the center by its nature would "racially balance" the sixth grades. However, no court whose decisions are binding on this court have included "racial balancing" in its definition of a unitary school system. It is the court's function to require the establishment of a school system which meets the constitutional standard, and there it ends. If the schools are to be racially balanced to stabilize racial composition of the schools and the neighborhoods they serve, then this is a consideration for the people of the community acting through their school boards and other units of local and state government.

*Lanier and McNicol.* The board amendments of April 13, 1970, eliminate the pairing of these schools and establish complete middle schools in each by changing the boundaries of the attendance areas they serve. Under either plan, the schools are desegregated. Since both have adequate facilities for middle schools (Appendix IV of Court's Exhibit 1), and since the pairing arrangement would call for more walking and more transportation, it is desirable to continue to operate them as middle schools.

*Attucks and Olsen.* Since Attucks Junior High is a substandard facility when used as a complete junior high or middle school (Appendix V of Court's Exhibit 1), it is left in a "paired" arrangement with Olsen. The board plans to convert Attucks to other uses when a suitable middle school is built.

ELEMENTARY SCHOOLS.

Using the school board plan as amended, it is possible to desegregate all Black elementary schools except four: Larkdale, Lincoln Park, C. A. Moore, and Walker. These schools are to remain with all-Black student bodies because they are located in the heart of all-Black neighborhoods. Expansion of their attendance areas in almost any direction would result in more Black students and no White students, although traffic barriers (railroads, busy thoroughfares) are a factor in limited instances, as will appear more fully by reference to the school board plan and amendments (Defendants' Exhibits 1, 2 and 3). In some instances the result would be to segregate other schools. The high population density of the Black neighborhoods surrounding these segregated schools and the near capacity status of student bodies of most of the schools, enormously complicates rezoning of attendance areas to effect integration.

The only alternatives to leaving these schools segregated are (1) transport or "walk in" students from non-contiguous or distant areas; or (2) "pairing" an all-White school with an all-Black school, that is, by combining the attendance areas of the "paired" schools and sending all students in certain grades to one of the schools and all students in the other grades to the other school. In some instances "grouping" of three or more

schools is resorted to, rather than "pairing."

It is difficult to justify the removal of young students to distant areas for the sole purpose of integrating a school. "Pairing" or "grouping" of schools also involves the same elements of additional transportation or "walking in." The same principles apply to attempts to integrate more Blacks into predominantly White schools. The time, inconvenience, and expense involved, as well as the safety factor are all relevant to the resolution of the problem.

The three elementary schools being closed, Braithwaite, B. F. James, and Coleman (moved to Blanche Ely facility) all are housed in sub-standard plants and closing them also facilitates the desegregation program.

The school board has stated that the elementary schools were operated on a neighborhood plan and that they wished to continue to operate them as neighborhood schools as defined by the case of Ellis v. Board of Public Instruction of Orange County, Florida, 5 Cir., 1970, 423 F.2d 203. The *Ellis* opinion by Circuit Judge Bell carefully limited the applicability of the principles there delineated to the particular facts of the case. It held that the neighborhood system would require that attendance area boundary lines be drawn equi-distant between the schools and that all students must be assigned to the school nearest their homes, without variances and limited only by the capacity of the school, and then to the next nearest school. The result of strict adherence to the equi-distant formula in Orange County was that eight of the eleven all Black schools were desegregated.

 But in Broward County many school residential areas have been given unusual shapes for the purpose of desegregating the schools. No attempt has been made to follow the Orange County equi-distant boundary formula. To do so would result in re-segregation in many instances. The equi-distant formula is acceptable as an aid in establishing a unitary system, where the result is de-segregation, but not otherwise. "The only school desegregation plan that meets constitutional standards is one that works," as stated with emphasis by the Fifth Circuit in United States v. Jefferson County Board of Education, 5 Cir. 1966, 372 F.2d 836, 847 (Jefferson I), in holding that school boards could not rely on "freedom of choice" to establish a unitary system where it was shown that freedom of choice did not result in significant desegregation.

### INSTRUCTIONAL STAFF.

The board's plan calling for proportional assignment of instructional staff in every school in the same approximate White to Black ratio that Whites bear to Blacks in the whole system is in accordance with the case law of this circuit and is approved.

### PUPIL REASSIGNMENT.

The provisions proposed in the board's amendments of April 13, 1970, are designed to effectively aid in desegregation. They are:

1. Any pupil, with parental consent, shall have the right to transfer from a school at which his race is in the majority to the next nearest school at which his race is in the minority and the board shall furnish free transportation provided the distance involved meets state transportation statutes.

2. Other reassignment requests will be considered providing the request does not involve the transfer of a pupil in which his race is in the minority to a school in which his race is in the majority.

### BLACK ADMINISTRATORS.

The new provisions for Black administrators are satisfactory. They are:

Administrators will be assigned to elementary schools without regard to race.

Broward County will institute an aggressive program of recruiting and

training Black administrators for the central office staff.

## OTHER PROVISIONS.

The board's plan in its other provisions appears to be in accordance with accepted educational procedures and is approved.

## RESULTS ACHIEVED

In the plan heretofore outlined under "A Unitary System" there will be 3,277 Black students, in four elementary schools, attending segregated schools, out of 26,685 Black students in the whole system. This constitutes 12.3% of the Black students attending segregated schools and 87.7% attending desegregated schools. There are seven other elementary schools where the student bodies are 92% or more Black. Although student bodies composed of 8% or less Whites may be minimal desegregation, it is consistent with the desegregation achieved under the equi-distant formula which was approved on February 17, 1970, by the Fifth Circuit in Ellis v. Orange County, *supra,* (See Appendix II of *Ellis,*) and appears no less acceptable when achieved through the plan here used. It is not the plan but the results that count.

■ There will be one all-White middle school and 39 all-White elementary schools remaining. This is acceptable in a unitary system since it is based on all-White residential patterns and the preponderantly White population.

Appendix I presents a school by school analysis of the projected student attendance by race for 1970–71, as adjusted by the requirements of this order, as well as showing the grades comprising each school, building capacities, etc. The figures used for 1970–71 are approximate, based on current figures adjusted for expected growth.

The majority to minority transfer provision and review by the Bi-racial Committee in the areas of school site selection, pupil transfer, and transportation are designed to assure further desegregation in the future.

A Bi-racial Committee composed of twelve members, six White and six Black, should be appointed by the court to review the operation of majority to minority pupil transfer rule, the transportation system, and selection of school sites. The Committee is authorized to hold hearings and make recommendations to the school board in connection with these activities. The chairmanship shall alternate annually between a White chairman and a Black chairman. The plaintiffs and the defendants shall each submit to the court within ten days at least six names of nominees for the committee.

## CONCLUSION OF LAW

■ The plan outlined in the section of this opinion headed "A Unitary System," including Appendix I, constitutes a unitary public school system for the Broward County, Florida, school district.

## FINAL JUDGMENT

It is ordered and adjudged that:

1. The Board of Public Instruction of Broward County, Florida, and William C. Drainer, Superintendent of Public Instruction, and his successors in office, are permanently enjoined from operating a dual system of public schools segregated by race, and shall henceforth operate a unitary school system as described in the section of the foregoing Findings of Fact headed "A Unitary System," (pages 14 to 20). The boundaries of the student attendance areas shall be as described in the School Board Plan as amended (Defendants' Exhibits 1, 2, and 3).

2. The transfer of instructional staff and students shall be made after the close of the current school year, June 17, 1970, and shall be effective for the summer session of 1970 and thereafter.

3. The separate petitions of the several intervenors are hereby denied, except as the relief therein sought may be included in the over-all plans herein approved.

4. The court retains jurisdiction of the cause and the parties for the purpose of ensuring that the plan here adopted is carried out and the school system operated consistent with the requirements of the United States Constitution.

APPENDIX I

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

HIGH SCHOOLS

ALL CORRECTIONS THRU APRIL 27, 1970

STUDENT INTEGRATION PRESENT AND PROJECTED

HIGH SCHOOLS

| SCHOOL | Present 1969-1970 | | | | | Projected 1970-1971 | | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Grade | Negro | White | Total | % Negro | Grades | Negro | White | Total | % Negro | | | |
| **NORTH AREA** | | | | | | | | | | | | | |
| Blanche Ely | 9-12 | 1,900 | 0 | 1,909 | 100% | | | | | | 1,028 | | 0 |
| Deerfield Beach | | | | | | 9-11 | 837 | 1,790 | 2,627 | 31.9% | 2,352 | 3,998 | 0 |
| Pompano Beach | 10-12 | 222 | 2,806 | 3,028 | 7.3% | 9-12 | 733 | 2,470 | 3,203 | 22.9% | 2,514 | 4,274 | 0 |
| Sub-Total | | 2,131 | 2,806 | 4,937 | 43.1% | | 1,570 | 4,260 | 5,830 | 26.9% | 5,894 | 8,272 | 0 |
| **CENTRAL AREA** | | | | | | | | | | | | | |
| Dillard | 9-12 | 1,749 | 0 | 1,749 | 100% | 9-12 | 1,160 | 878 | 2,038 | 56.9% | 1,280 | | |
| Fort Lauderdale | 10-12 | 168 | 2,006 | 2,174 | 7.7% | 9-12 | 401 | 2,632 | 3,033 | 13.2% | 1,847 | 3,140 | 2 |
| Northeast | 9-12 | 76 | 2,807 | 2,883 | 2.6% | 9-12 | 80 | 2,790 | 2,870 | 2.8% | 2,410 | 4,097 | 7 |
| Nova | 9-12 | 169 | 2,715 | 2,884 | 5.9% | 9-12 | 393 | 1,741 | 2,134 | 18.4% | 1,800 | 3,000 | 0 |
| Plantation | 9-12 | 0 | 2,922 | 2,922 | 0% | 9-12 | 399 | 3,594 | 3,993 | 10.0% | 2,351 | 3,997 | 3 |
| Stranahan | 10-12 | 416 | 2,253 | 2,669 | 15.6% | 9-12 | 650 | 3,124 | 3,774 | 17.2% | 2,609 | 4,435 | 0 |
| Sub-Total | | 2,578 | 12,703 | 15,281 | 16.9% | | 3,083 | 14,759 | 17,842 | 17.3% | 12,297 | 18,669 | 12 |

LA201.63

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED
HIGH SCHOOLS

| SCHOOL | Present 1969-1970 | | | | | Projected 1970-1971 | | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Grade | Negro | White | Total | % Negro | Grades | Negro | White | Total | % Negro | | | |
| **SOUTH AREA** | | | | | | | | | | | | | |
| Hollywood Hills | 9-12 | 270 | 1,931 | 2,201 | 12.3% | 9-12 | 478 | 2,667 | 3,145 | 15.2% | 2,000 | 3,400 | 0 |
| McArthur | 9-12 | 310 | 2,215 | 2,525 | 12.3% | 9-12 | 170 | 2,747 | 2,917 | 5.8% | 2,219 | 3,160 | 1 |
| Miramar | | 0 | 0 | 0 | 0% | 9-11 | 320 | 2,079 | 2,399 | 13.3% | 2,352 | 3,998 | 0 |
| South Broward | 10-12 | 296 | 1,801 | 2,097 | 14.1% | 9-12 | 487 | 2,239 | 2,726 | 17.9% | 1,937 | 3,293 | 0 |
| Sub-Total | | 876 | 5,947 | 6,823 | 12.8% | | 1,455 | 9,732 | 11,187 | 13.0% | 8,508 | 13,851 | 1 |
| | | | | | | | | | | | | | |
| TOTAL HIGH SCHOOLS | | 5,585 | 21,456 | 27,041 | 20.7% | | 6,108 | 28,751 | 34,859 | 17.5% | 26,699 | 40,792 | 13 |

CA20157

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

MIDDLE SCHOOLS

ALL CORRECTIONS THRU APRIL 27, 1970

STUDENT INTEGRATION PRESENT AND PROJECTED

MIDDLE OR JUNIOR HIGH SCHOOLS

| SCHOOL | Grade | Present 1969-1970 | | | | | Projected 1970-1971 | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Negro | White | Total | % Negro | Grades | Negro | White | Total | % Negro | | | |
| **NORTH AREA** | | | | | | | | | | | | | |
| Deerfield Beach | 7-9 | 387 | 1,241 | 1,682 | 23.8% | 6-8 | 501 | 1,134 | 1,635 | 30.6% | 1,401 | 1,821 | 0 |
| Margate | 7-9 | 7 | 857 | 864 | 0.9% | 6-8 | 318 | 866 | 1,184 | 26.9% | 1,027 | 1,335 | 0 |
| Pompano Beach | 7-9 | 34 | 1,446 | 1,480 | 2.3% | 7-8 | 292 | 1,124 | 1,416 | 20.6% | 1,282 | 1,666 | 0 |
| Rickards | 6-8 | 4 | 1,192 | 1,196 | 0.3% | 6-8 | 299 | 1,400 | 1,699 | 17.6% | 1,649 | 2,143 | 0 |
| Sub-Total | | 432 | 4,736 | 5,168 | 8.4% | | 1,410 | 4,524 | 5,934 | 23.7% | 5,359 | 6,965 | 0 |
| **CENTRAL AREA** | | | | | | | | | | | | | |
| Everglades | 7-8 | 1,289 | 5 | 1,294 | 99.6% | 6-8 | 244 | 892 | 1,136 | 21.5% | 1,285 | 1,644 | 0 |
| Lauderdale Lakes | 6-8 | 0 | 1,148 | 1,148 | 0% | 6-8 | 362 | 1,275 | 1,637 | 22.1% | 1,649 | 2,143 | 0 |
| Lauderhill | 6-8 | 1 | 1,167 | 1,168 | 0.1% | 6-8 | 358 | 938 | 1,296 | 27.6% | 1,649 | 2,143 | 0 |
| New River | 7-9 | 0 | 1,272 | 1,272 | 0% | 6-8 | 321 | 1,068 | 1,389 | 23.1% | 1,039 | 1,351 | 1 |
| Nova | 7-8 | 76 | 1,049 | 1,125 | 6.8% | 7-8 | 151 | 986 | 1,137 | 13.3% | 1,200 | 1,560 | 0 |
| Parkway | 6-9 | 957 | 442 | 1,399 | 68.4% | 6-8 | 318 | 1,099 | 1,417 | 22.4% | 1,540 | 2,002 | 0 |
| Plantation | 6-8 | 2 | 1,119 | 1,121 | 0.2% | 6-8 | 324 | 1,313 | 1,637 | 19.8% | 1,649 | 2,143 | 0 |
| Rogers | 7-9 | 208 | 1,474 | 1,682 | 12.4% | 6-8 | 616 | 953 | 1,569 | 39.3% | 1,334 | 1,812 | 0 |

[A20161]

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED

MIDDLE OR JUNIOR HIGH SCHOOLS

| SCHOOL | Present 1969-1970 | | | | | Grades | Projected 1970-1971 | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Grade | Negro | White | Total | % Negro | | Negro | White | Total | % Negro | | | |
| Sunrise | 7-9 | 115 | 2,105 | 2,220 | 5.2% | 6-8 | 445 | 1,331 | 1,776 | 25.1% | 1,821 | 2,718 | 0 |
| Sub-Total | | 2,648 | 9,781 | 12,429 | 21.3% | | 3,139 | 9,855 | 12,994 | 24.2% | 13,166 | 17,516 | 1 |
| SOUTH AREA | | | | | | | | | | | | | |
| Apollo | 6-8 | 0 | 905 | 905 | 0% | 6-8 | 0 | 1,588 | 1,588 | 0% | 1,649 | 2,143 | 0 |
| Attucks | 6-9 | 482 | 0 | 482 | 100% | 6 | 194 | 611 | 805 | 24.0% | 894 | 1,162 | 0 |
| Driftwood | 7-9 | 0 | 1,199 | 1,199 | 0% | 6-8 | 20 | 1,587 | 1,607 | 1.2% | 1,535 | 1,995 | 0 |
| Hallandale | 7-9 | 61 | 823 | 884 | 6.9% | 6-8 | 184 | 691 | 875 | 21.0% | 725 | 945 | 0 |
| Lanier | 7-9 | 852 | 0 | 852 | 100% | 6-8 | 262 | 491 | 753 | 34.8% | 827 | 1,075 | 0 |
| McNicol | 7-9 | 86 | 1,142 | 1,228 | 7.0% | 6-8 | 329 | 764 | 1,093 | 30.1% | 1,094 | 1,422 | 0 |
| Olsen | 7-9 | 44 | 1,566 | 1,610 | 2.7% | 6-8 | 268 | 1,086 | 1,354 | 19.8% | 1,334 | 1,734 | 0 |
| Perry | 7-9 | 2 | 1,801 | 1,803 | 0.1% | 7-8 | 285 | 1,130 | 1,415 | 20.1% | 1,560 | 2,028 | 0 |
| Sub-Total | | 1,527 | 7,436 | 8,963 | 17.0% | | 1,542 | 7,948 | 9,490 | 16.2% | 9,618 | 12,504 | 0 |
| TOTAL | | 4,607 | 21,953 | 26,560 | 17.3% | | 6,091 | 22,327 | 28,418 | 21.4% | 28,143 | 36,985 | 1 |

LA2017]

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

ELEMENTARY

ALL CORRECTIONS THRU APRIL 27, 1970

STUDENT INTEGRATION PRESENT AND PROJECTED

ELEMENTARY

| SCHOOL | Grade | Present 1969-1970 | | | | Grades | Projected 1970-1971 | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Negro | White | Total | % Negro | | Negro | White | Total | % Negro | | | |
| NORTH AREA | | | | | | | | | | | | | |
| Braithwaite | 1-6 | 464 | 0 | 464 | 100% | | 0 | 0 | 0 | 0 | 180 | 510 | 0 |
| Charles Drew | 1-6 | 986 | 0 | 986 | 100% | 1-6 | 1,014 | 17 | 1,031 | 98.3% | 660 | 1,050 | 0 |
| Coconut Creek | 1-6 | 21 | 745 | 766 | 2.7% | 1-5 | 10 | 689 | 699 | 1.4% | 720 | 720 | 0 |
| Coleman | 1-6 | 493 | 0 | 493 | 100% | 1-6 | 601 | 25 | 626 | 96.0% | 270 | 570 | 0 |
| Cresthaven | 1-6 | 29 | 589 | 618 | 4.7% | 1-6 | 0 | 705 | 705 | 0% | 720 | 720 | 0 |
| Cypress | 1-6 | 0 | 703 | 703 | 0% | 1-6 | 0 | 725 | 725 | 0% | 720 | 720 | 0 |
| Deerfield Beach | 1-6 | 95 | 650 | 745 | 12.8% | 1-5 | 213 | 487 | 700 | 30.4% | 630 | 840 | 0 |
| Deerfield Park | K-6 | 502 | 0 | 502 | 100% | 1-5 | 562 | 145 | 707 | 79.4% | 480 | 540 | 6 |
| Floranada | 1-5 | 0 | 824 | 824 | 0% | 1-5 | 0 | 837 | 837 | 0% | 720 | 960 | 0 |
| Elementary "A" | 0 | 0 | 0 | 0 | 0% | 1-5 | 114 | 159 | 273 | 41.7% | 0 | 0 | 10 |
| Margate | 1-6 | 0 | 788 | 788 | 0% | 1-5 | 0 | 682 | 682 | 0% | 720 | 720 | 0 |
| Markham | 1-6 | 523 | 62 | 585 | 89.0% | 1-6 | 536 | 60 | 596 | 89.9% | 600 | 630 | 0 |
| McNab | 1-6 | 0 | 618 | 618 | 0% | 1-6 | 0 | 725 | 725 | 0% | 720 | 720 | 0 |
| Norcrest | 1-6 | 0 | 1,044 | 1,044 | 0% | 1-6 | 0 | 749 | 749 | 0% | 720 | 1,020 | 0 |

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED
ELEMENTARY

| SCHOOL | Present 1969-1970 | | | | | Projected 1970-1971 | | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Grade | Negro | White | Total | % Negro | Grades | Negro | White | Total | % Negro | | | |
| North Andrews Gardens | 1-6 | 41 | 1,043 | 1,084 | 3.8% | 1-6 | 40 | 937 | 977 | 4.1% | 720 | 1,080 | 0 |
| Palmview | 1-6 | 107 | 479 | 586 | 18.2% | 1-6 | 201 | 483 | 684 | 29.3% | 720 | 720 | 0 |
| Pompano Beach | 1-6 | 15 | 837 | 852 | 1.8% | 1-6 | 20 | 663 | 683 | 2.9% | 720 | 900 | 0 |
| Sanders Park | 1-6 | 853 | 2 | 855 | 99.7% | 1-6 | 666 | 48 | 714 | 93.2% | 720 | 900 | 0 |
| Tedder | 1-6 | 0 | 733 | 733 | 0% | 1-5 | 0 | 628 | 628 | 0% | 720 | 720 | 0 |
| Sub-Total | | 4,129 | 9,117 | 13,246 | 31.2% | | 3,977 | 8,764 | 12,741 | 31.2% | 11,460 | 14,040. | 16 |
| CENTRAL AREA | | | | | | | | | | | | | |
| Bayview | 1-6 | 0 | 535 | 535 | 0% | 1-5 | 0 | 459 | 459 | 0% | 450 | 570 | 0 |
| Bennett | 1-6 | 4 | 884 | 888 | 0.5% | 1-6 | 0 | 700 | 700 | 0% | 720 | 870 | 0 |
| Broadview | 1-6 | 0 | 658 | 658 | 0% | 1-5 | 0 | 704 | 704 | 0% | 720 | 810 | 0 |
| Broward Estates | 1-5 | 904 | 89 | 993 | 91.0% | 1-6 | 779 | 78 | 857 | 90.8% | 720 | 990 | 0 |
| Castle Hill | 1-6 | 0 | 550 | 550 | 0% | 1-5 | 85 | 652 | 737 | 11.5% | 720 | 720 | 0 |
| Croissant Park | 1-6 | 0 | 779 | 779 | 0% | 1-5 | 0 | 550 | 550 | 0% | 720 | 810 | 0 |
| Dillard | 1-6 | 996 | 2 | 998 | 99.7% | 1-6 | 982 | 3 | 985 | 99.6% | 840 | 1,020 | 0 |
| East Side | 1-6 | 1 | 496 | 497 | 0.2% | 1-5 | 88 | 453 | 541 | 16.2% | 450 | 510 | 1 |

[A20191

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED

ELEMENTARY

| SCHOOL | Grade | Present 1969-1970 | | | | | Projected 1970-1971 | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Negro | White | Total | % Negro | Grades | Negro | White | Total | % Negro | | | |
| Edgewood | 1-6 | 3 | 489 | 492 | 0.6% | 1-5 | 0 | 398 | 398 | 0% | 540 | 600 | 0 |
| Harbordale | 1-6 | 0 | 378 | 378 | 0% | 1-5 | 0 | 333 | 333 | 0% | 300 | 420 | 0 |
| Hortt | 1-6 | 0 | 380 | 380 | 0% | 1-5 | 0 | 286 | 286 | 0% | 360 | 390 | 0 |
| Larkdale | 1-6 | 1,273 | 0 | 1,273 | 100% | 1-6 | 1,054 | 0 | 1,054 | 100% | 720 | 1,320 | 0 |
| Lauderdale Manors | 1-6 | 20 | 933 | 953 | 2.1% | 1-5 | 0 | 664 | 664 | 0% | 780 | 930 | 0 |
| Lauderhill | 1-5 | 1 | 650 | 651 | 0.1% | 1-5 | 125 | 742 | 867 | 14.4% | 720 | 760 | 3 |
| Lincoln Park | 1-6 | 797 | 0 | 797 | 100% | 1-5 | 892 | 0 | 892 | 100% | 480 | 900 | 0 |
| Lloyd Estates | 1-6 | 52 | 450 | 502 | 10.4% | 1-6 | 55 | 607 | 662 | 8.3% | 480 | 570 | 4 |
| Meadowbrook | 1-6 | 0 | 482 | 482 | 0% | 1-5 | 0 | 402 | 402 | 0% | 420 | 510 | 0 |
| Mirror Lake | 1-5 | 0 | 500 | 500 | 0% | 1-5 | 0 | 568 | 568 | 0% | 720 | 720 | 0 |
| North Fork | 1-6 | 621 | 0 | 621 | 100% | 1-6 | 162 | 231 | 393 | 41.2% | 720 | 720 | 0 |
| North Side | 1-6 | 39 | 633 | 672 | 5.8% | 1-5 | 112 | 550 | 662 | 16.9% | 690 | 690 | 0 |
| Oakland Park | 1-6 | 63 | 369 | 432 | 14.9% | 1-6 | 66 | 410 | 476 | 13.8% | 390 | 855 | 0 |
| Oriole | 1-6 | 0 | 684 | 684 | 0% | 1-5 | 0 | 524 | 524 | 0% | 0 | 0 | 18 |
| Peters | 1-5 | 0 | 494 | 494 | 0% | 1-5 | 0 | 664 | 664 | 0% | 720 | 720 | 0 |

LA20201

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED
ELEMENTARY

| SCHOOL | Present 1969-1970 | | | | | Projected 1970-1971 | | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Grade | Negro | White | Total | % Negro | Grades | Negro | White | Total | % Negro | | | |
| Pine Ridge | 1-6 | 0 | 525 | 525 | 0% | 1-5 | 0 | 514 | 514 | 0% | 480 | 540 | 0 |
| Plantation | 1-5 | 1 | 643 | 644 | 0.2% | 1-5 | 86 | 643 | 729 | 11.7% | 600 | 630 | 4 |
| Plantation Park | 1-6 | 0 | 1,028 | 1,028 | 0% | 1-6 | 0 | 1,092 | 1,092 | 0% | 720 | 1,020 | 3 |
| Riverland | 1-6 | 0 | 699 | 699 | 0% | 1-5 | 125 | 566 | 691 | 19.0% | 720 | 720 | 0 |
| Rock Island | 1-6 | 847 | 4 | 851 | 99.5% | 1-6 | 642 | 50 | 692 | 92.7% | 450 | 870 | 0 |
| Sabal Palm | 1-6 | 800 | 17 | 817 | 97.9% | 1-6 | 632 | 25 | 657 | 96.1% | 720 | 720 | 0 |
| Sunland Park | 1-6 | 671 | 1 | 672 | 99.8% | 1-6 | 605 | 127 | 732 | 82.7% | 720 | 720 | 0 |
| Sunset | 1-6 | 0 | 700 | 700 | 0% | 1-5 | 0 | 583 | 583 | 0% | 720 | 720 | 0 |
| Stephen Foster | 1-6 | 0 | 515 | 515 | 0% | 1-5 | 0 | 422 | 422 | 0% | 480 | 510 | 0 |
| Tropical | | | | | | 1-6 | 0 | 0 | 0 | 0% | 0 | 0 | 0 |
| Village | 1-5 | 0 | 705 | 705 | 0% | 1-5 | 0 | 628 | 628 | 0% | 720 | 720 | 0 |
| Walker | 1-6 | 751 | 0 | 751 | 100% | 1-6 | 733 | 0 | 733 | 100% | 720 | 750 | 0 |
| Westwood Heights | 1-6 | 3 | 717 | 720 | 0.4% | 1-5 | 184 | 595 | 779 | 23.6% | 720 | 750 | 1 |
| Wilton Manors | 1-6 | 2 | 704 | 706 | 0.3% | 1-6 | 0 | 553 | 553 | 0% | 720 | 810 | 0 |
| Sub-Total | | 7,849 | 16,693 | 24,542 | 32.0% | | 7,407 | 15,776 | 23,183 | 32.0% | 21,900 | 26,025 | 34 |

[A20211]

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED
ELEMENTARY

| SCHOOL | Present 1969-1970 | | | | Projected 1970-1971 | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Grade | Negro | White | Total | % Negro | Grades | Negro | White | Total | % Negro | | | |
| **SOUTH AREA** | | | | | | | | | | | | | |
| A. C. Perry | 1-6 | 0 | 647 | 647 | 0% | 1-6 | 0 | 658 | 658 | 0% | 720 | 720 | 0 |
| Bethune | 1-5 | 559 | 0 | 559 | 100% | 1-5 | 294 | 293 | 587 | 50.0% | 600 | 630 | 0 |
| Boulevard Heights | 1-6 | 0 | 782 | 782 | 0% | 1-5 | 0 | 793 | 793 | 0% | 720 | 1,200 | 0 |
| Carver Ranches | 1-6 | 955 | 0 | 955 | 100% | 1-6 | 663 | 37 | 700 | 94.7% | 720 | 990 | 0 |
| Colbert | 1-6 | 2 | 737 | 739 | 0.3% | 1-5 | 148 | 474 | 622 | 23.7% | 720 | 1,020 | 0 |
| Collins | 1-6 | 447 | 0 | 447 | 100% | 1-5 | 409 | 71 | 480 | 85.2% | 660 | 660 | 0 |
| Cooper City | 1-6 | 5 | 521 | 526 | 0.9% | 1-5 | 6 | 510 | 516 | 1.1% | 0 | 510 | 0 |
| Dania | 1-6 | 20 | 852 | 872 | 2.3% | 1-5 | 156 | 395 | 551 | 28.3% | 780 | 870 | 0 |
| Davie | 1-6 | 41 | 518 | 559 | 7.3% | 1-5 | 40 | 514 | 554 | 7.2% | 530 | 560 | 0 |
| Driftwood | 1-6 | 0 | 895 | 895 | 0% | 1-5 | 0 | 779 | 779 | 0% | 720 | 900 | 0 |
| Eisenhower | 1-6 | 38 | 672 | 710 | 5.4% | 1-5 | 45 | 577 | 622 | 7.2% | 720 | 720 | 0 |
| Fairway | 1-6 | 0 | 610 | 610 | 0% | 1-6 | 0 | 700 | 700 | 0% | 720 | 720 | 0 |
| Hallandale | 1-6 | 91 | 597 | 688 | 13.2% | 1-5 | 120 | 402 | 522 | 22.9% | 620 | 710 | 0 |
| Hollywood Central | 1-6 | 1 | 719 | 720 | 0.1% | 1-5 | 0 | 657 | 657 | 0% | 720 | 1,350 | 0 |

CA20223

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED

ELEMENTARY

| SCHOOL | Grade | Present 1969-1970 | | | | Grades | Projected 1970-1971 | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Negro | White | Total | % Negro | | Negro | White | Total | % Negro | | | |
| Hollywood Hills | 1-6 | 0 | 833 | 833 | 0% | 1-5 | 0 | 673 | 673 | 0% | 720 | 840 | 0 |
| Hollywood Park | 1-5 | 0 | 674 | 674 | 0% | 1-5 | 0 | 694 | 694 | 0% | 720 | 720 | 0 |
| James | 1-6 | 270 | 0 | 270 | 100% | | 0 | 0 | 0 | 0% | 210 | 300 | 0 |
| Lake Forest | 1-6 | 0 | 629 | 629 | 0% | 1-5 | 137 | 625 | 762 | 17.9% | 600 | 630 | 5 |
| Miramar | 1-6 | 0 | 717 | 717 | 0% | 1-6 | 0 | 731 | 731 | 0% | 720 | 720 | 1 |
| Moore, C. A. | 1-6 | 650 | 0 | 650 | 100% | 1-5 | .598 | 0 | 598 | 100% | 720 | 720 | 0 |
| Nova Blanche Forman | 1-6 | 13 | 681 | 694 | 0.2% | 1-5 | 17 | 603 | 620 | 2.7% | 720 | 720 | 0 |
| Oakridge | 1-6 | 0 | 684 | 684 | 0% | 1-5 | 117 | 523 | 640 | 18.2% | 720 | 750 | 0 |
| Orange-Brook | 1-6 | 150 | 634 | 784 | 19.1% | 1-6 | 134 | 547 | 681 | 19.6% | 720 | 780 | 0 |
| Pembroke Pines | 1-6 | 0 | 1,081 | 1,081 | 0% | 1-6 | 0 | 968 | 968 | 0% | 720 | 1,110 | 0 |
| Sheridan Hills | 1-6 | 0 | 235 | 235 | 0% | 1-5 | 0 | 605 | 605 | 0% | 0 | 0 | 21 |
| Sheridan Park | 1-6 | 0 | 781 | 781 | 0% | 1-5 | 0 | 655 | 655 | 0% | 720 | 750 | 0 |
| Stirling | 1-6 | 2 | 714 | 716 | 0.3% | 1-5 | 3 | 631 | 634 | 0.5% | 720 | 960 | 0 |
| Sunshine | 1-6 | 0 | 963 | 963 | 0% | 1-6 | 0 | 995 | 995 | 0% | 480 | 960 | 0 |
| Watkins | 1-6 | 84 | 521 | 605 | 13.9% | 1-6 | 215 | 525 | 740 | 29.0% | 720 | 750 | 0 |

[A2023]

BROWARD COUNTY BOARD OF PUBLIC INSTRUCTION
1320 Southwest 4th Street
Fort Lauderdale, Florida

STUDENT INTEGRATION PRESENT AND PROJECTED

ELEMENTARY

| SCHOOL | Present 1969-1970 | | | | Projected 1970-1971 | | | | NORMAL CAPACITY | MAXIMUM CAPACITY | PORTABLES NEEDED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Grade 1-5 Negro | White | Total | % Negro | Grades 1-5 Negro | White | Total | % Negro | | | |
| West Hollywood | 3 | 607 | 610 | 0.5% | 0 | 755 | 755 | 0% | 720 | 1,110 | 0 |
| Sub-Total | 3,331 | 17,304 | 20,635 | 16.1% | 3,102 | 16,390 | 19,492 | 15.9% | 18,760 | 23,350 | 27 |
| Total | 15,309 | 43,114 | 58,423 | 26.2% | 14,486 | 40,930 | 55,416 | 26.1% | 52,120 | 63,415 | 77 |

[A2024]