CITIZENS CONCERNED ABOUT OUR CHILDREN, Jane DOE, as Legal Guardian of Mary Doe, and J. Shaq, as Parent and Legal Guardian of L. Shaq, Plaintiffs,

v.

THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA, Defendant.

No. 95–6517–CIV–RYSKAMP.

United States District Court,
S.D. Florida.

May 13, 1997.

Christopher Rogers Fertig, Darlene M. Lidondici, Fertig & Gramling, Fort Lauderdale, FL, for Plaintiffs.

Edward James Marko, Marko and Stephany, Marylin Batista, Office of School Bd. Atty., Fort Lauderdale, FL, for Defendant.

### OMNIBUS ORDER

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon the Defendant's Motion for Judgment the Pleadings [DE–105], the Defendant's Motion for Summary Judgment as to All Plaintiffs on the Basis of Mootness [DE–106], and the Defendant's Motion for Summary Judgment as to Plaintiff Citizens Concerned About Our Children [DE–107]. The Court heard oral argument on these motions on April 22, 1997. The Motions have been fully briefed by all the parties and are ripe for review.

### I. BACKGROUND

This is the fourth in a line of desegregation cases stretching back to 1970 concerning the Broward County School Board ("the School Board").[1] In 1970, following allegations that

1. There were two cases prior to 1970, but nothing definitive came of either of those cases. *See,*

*Allen v. Board of Public Instruction of Broward*

the School Board was operating a dual system, i.e. one that is intentionally racially segregated, this Court (under Judge Cabot) entered a desegregation Order that directed the Broward County Public School District ("the School District") to integrate pursuant to a plan adopted by the Court. *Allen v. Board of Public Instruction of Broward County Fla.*, 312 F.Supp. 1127, 1129. The District Court's decision was upheld in relevant part on appeal. Id., Allen v. Board of Public Instruction of Broward County, Fla., 432 F.2d 362 (5th Cir.1970), *cert. denied,* 402 U.S. 952, 91 S.Ct. 1609, 29 L.Ed.2d 123 (1971), *and cert. denied,* 402 U.S. 952, 91 S.Ct. 1612, 29 L.Ed.2d 123 (1971). One year later, in June of 1971, the Court entered an Order declaring that the School District, now operating under the desegregation plan adopted by the Court, constituted a unitary school system, i.e. one that is racially integrated. *Id.,* 329 F.Supp. 251, 252 (S.D.Fla. 1971). The Court also announced that it would retain jurisdiction to assure that the School Board continued to operate a unitary system. *Id.* In 1979, the Court (under Judge Eaton) found that no further judicial action was required and it relinquished jurisdiction over the *Allen* action.

In 1983, two black children filed an action styled *Smith v. McFatter,* No. 83–6086–CIV–RYSKAMP, alleging that the School Board violated their civil rights by discriminating against them on the basis of race. They claimed that the School Board had failed to comply with the Court's Orders of 1970 and 1971 and was, *inter alia,* allowing resegregation to take place through maintaining outdated student assignment boundaries, failing to maintain traditionally black schools, and practicing a bussing plan that discriminated against black students. This case was ultimately resolved by the Parties. Pursuant to the Parties' settlement agreement, the undersigned United States District Judge entered a Consent Decree on April 29, 1987, that held that the School Board was not in violation of the Constitution or any other laws. Order at 2. The Consent Decree went on to note that the purpose of the settlement agreement was to "ensure the maintenance

of a unitary system of education for the school system of Broward County, Florida." *Id.* The Consent Decree also required the School Board to undertake the following actions to achieve the purposes of the settlement: (1) appoint a bi-racial committee to review all school district boundaries, all student transfer or student reassignment policies, and all proposed school closings, (2) restrict Magnet Programs to "traditionally black schools," (3) hire staff for and upgrade the Equal Opportunity Office, (4) annually review and evaluate the effectiveness of its own affirmative action plan, (5) hire faculty and staff at each school that, as far as practical, reflects the racial mix of the total Broward County population, and (6) continue to upgrade the school facilities, curriculum, and extracurricular activities in traditionally black schools to ensure that they are "essentially" equal to traditionally white schools. Order at 2–5. The Court also retained jurisdiction to enforce the terms of the settlement. Order at 5. This Consent Decree remained in force until 1995.

A third case was filed in 1992, this time by white parents on behalf of their minor children challenging the denial of student assignment boundary changes based on race. *Washington, et al. v. School Board of Broward County, et al.,* No. 92–6177–CIV–RYSKAMP. These plaintiffs claimed that the School District was now unitary and that therefore the School Board could not deny, solely on the basis of race, a white child's request to transfer out of a predominantly black school and into an integrated, but majority white, school. The Court once again reaffirmed that the Broward County Public Schools were operating a unitary school system. Order of August 16, 1995. After the Court denied the plaintiff's request for partial summary judgment, the case was settled and never went to trial. Final Judgment of March 11, 1996.

Meanwhile, even as *Washington v. School Board* was pending before this Court, two parents of black children in the Broward County Public Schools together with an association calling itself Citizens Concerned About Our Children ("Citizens Concerned")

*County, Florida,* 312 F.Supp. 1127, 1130    (S.D.Fla.1970).

brought this instant cause of action against the School Board in June of 1995 alleging racial discrimination against black children.

Throughout the course of these latter two law suits, both the white plaintiffs in *Washington* and the black plaintiffs in *Citizens Concerned* argued that the School Board improperly relied on the 1987 Consent Decree in making unconstitutional race-based decisions. After the Court declared the Broward County Public School District to be unitary on August 16, 1995, the parties to *Smith v. McFatter* agreed that the Court need no longer retain jurisdiction to enforce the Consent Decree. In light of this stipulation, the Court entered an Order on June 13, 1996, vacating the Consent Decree as of August 16, 1995, the date of the Court's Order holding that the School District was unitary, and terminating the Court's jurisdiction over the matter. At that time, the Court also held that the actions taken by the School Board up to August 16, 1995, to comply with the 1987 Consent Decree had been taken in good faith to the extent that they complied with that Decree and used race-based criteria in an effort to achieve racial balancing.

Of the three cases that were all ongoing in 1995, the instant cause of action is the only one that remains.[2] The Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983. The individual Plaintiff Mary Doe claims that the School Board's practice of "starbursting," *i.e.* bussing children from their neighborhood schools to several different schools in an effort to integrate those schools, is applied only to black children and therefore discriminates against her in violation of the equal protection clause of the Fourteenth Amendment. The School Board maintains that it

has ended starbursting. The School Board also contends that when it did bus children, both black and white children were bussed in equal proportion, but that white children dropped out of the public schools, thus giving the outward appearance of unequal treatment. The individual Plaintiff L. Shaq claims that she was denied entrance to a magnet program solely on the basis of her race and therefore was discriminated against in violation of the equal protection clause of the Fourteenth Amendment. The School Board maintains that it was acting in good faith reliance on the 1987 Consent Decree in setting racial quotas for admission to magnet programs. The individual Plaintiffs together with Citizens Concerned make generalized claims involving discrimination in violation of the equal protection clause of the Fourteenth Amendment in everything from the condition of school buildings to suspension rates to extracurricular activities to curriculum.[3] The School Board disputes all of these generalized claims. The Plaintiffs seek declaratory relief, injunctive relief, and where available, damages.

The School Board first defends on the grounds of capacity and standing, and these are the issues that the Court will address in this Order.

## II. DISCUSSION

■ The School Board argues that Citizens Concerned is a loose association of parents and other citizens that has neither capacity nor standing to bring this cause of action. The School Board also argues that since the claims of the individual Plaintiffs are moot, they also do not have standing to pursue their claims.[4]

---

**2.** The Plaintiffs' attorneys have, however, filed a fifth suit against the School Board claiming, *inter alia*, that its student discipline policies and practices are racially discriminatory. *Marlene Campbell, etc. v. The Broward County School Board, et al.*, 96–6353–CIV–RYSKAMP.

**3.** The Plaintiffs also claim that they are suing under the Thirteenth Amendment and under 42 U.S.C. § 2000d. In their Complaint, however, the Plaintiffs do not mention, nor have they pursued, any particular claim that is cognizable only under the Thirteenth Amendment, and not under the equal protection clause of the Fourteenth Amendment as well. Moreover, the Supreme

Court has interpreted § 2000d as offering the same protections as the equal protection clause of the Fourteenth Amendment. *See, Regents of the University of California v. Bakke,* 438 U.S. 265, 287, 98 S.Ct. 2733, 2746, 57 L.Ed.2d 750 (1978). Any reference to the Thirteenth Amendment or to § 2000d is, therefore, redundant and the Court will treat all the Plaintiffs' claims as if the claims were brought under the Fourteenth Amendment.

**4.** Citizens Concerned maintains that the Court has already conclusively determined that the association has standing. Standing, however, is a jurisdictional requirement, and the Plaintiffs

## A. The Capacity of Citizens Concerned About Our Children to Bring Suit

█ Although under the common law an unincorporated association does not have capacity to bring a cause of action in its own name, the Federal Rules of Civil Procedure have specifically modified that rule, and an unincorporated association now may sue in its own name to enforce a substantive federal right. Fed.R.Civ.P. 17(b). The courts have recognized that civil rights organizations, such as the National Association for the Advancement of Colored People ("NAACP"), have "a right to the equal protection of the laws, in education and otherwise." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1562 (11th Cir.1990). Citizens Concerned, therefore, has capacity under Rule 17(b) to bring this cause of action to enforce its substantive rights under the equal protection clause of the 14th Amendment.

## B. The Standing of Citizens Concerned About Our Children to Bring This Suit

This Court's jurisdiction is limited by the Constitution of the United States to matters of cases or controversies. U.S. Const., Art. III § 2. Although the doctrine of standing is an expression of "prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Because standing is a jurisdictional requirement, the party invoking federal jurisdiction bears the burden of establishing that the Court has jurisdiction over the matter. *Id.* at 559–61, 112 S.Ct. at 2136.

█ In the instant action, the Court is guided by the essential test of associational standing promulgated by the United States Supreme Court in *Hunt v. Washington State Apple Advertising Commission:*

> Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). The School Board maintains that Citizens Concerned has failed to show that it meets the first prong of the *Hunt* test.[5]

█ Under the first prong of the *Hunt* test, Citizens Concerned must show that its members would have standing to bring this suit. This prong is "an Article III necessity for an association's representative suit." *United Food and Commercial Workers v. Brown Group*, —— U.S. ——, ——, 116 S.Ct. 1529, 1535, 134 L.Ed.2d 758 (1996). This means that for this Court to have jurisdiction over Citizens Concerned's claims, Citizens Concerned must establish under this prong (1) that its members have suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136 (internal citations omitted); *See, Hunt*, 432 U.S. at 343–344, 97 S.Ct. at 2441–2442. Citizens Concerned must support each element "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the same manner and degree of evidence required at the successive stages of the litigation." *Lujan, supra;* *See also*,

bear the burden throughout the litigation of showing that they have standing to bring this cause of action. See, discussion infra.

5. An association may also have standing to sue in its own name if it can claim injury to itself. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Citizens Concerned contends in a single sentence in its

response brief that it has such standing. Citizens Concerned has not, however, set forth any evidence to show that it, as an association, has suffered an injury caused by the School Board. Citizens Concerned, therefore, has failed to meet its burden of showing that it has standing under this particular theory.

Fed.R.Civ.P. 12(h)(3). This means that when the litigation has reached the stage of summary judgment, as the instant litigation has, the plaintiff must meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure and "set forth specific facts" through affidavits or other evidence supporting its claim for standing. *Lujan,* 504 U.S. at 561–63, 112 S.Ct. at 2137.

■ In response to the School Board's motion as to the issue of standing, Citizens Concerned filed with this Court a number of affidavits and newspaper articles testifying to the extensive involvement of Citizens Concerned in issues relating to magnet programs, starbursting and other educational issues in Broward County. The Plaintiffs have also provided this Court with a list of approximately 200 names of people who say that they agree with the aims of Citizens Concerned. This evidence does not, however, establish that any of the people who signed their names to the list or participated in the activities of Citizens Concerned have standing, as individuals, to bring this suit.

This suit involves alleged injury to minority children. Citizens Concerned has not established that any of its members are children in the Broward County public schools. In fact, the name of the association, Citizens Concerned About Our Children, suggests that none of the members of the association is a child, much less a child who attends a Broward County public school. Although some of the members of Citizens Concerned have children who attend Broward County public schools, this is insufficient to establish the standing of the association. None of these parents claims direct injury as the result of actions taken by the School Board. Two children, Mary Doe and J. Shaq, claim direct injury, and their parents or legal guardians, at least one of whom is a member of Citizens Concerned, properly represent them in this litigation as next friends. The parents themselves who are members of Citizens Concerned, however, have made no individual claims for relief, and the Court doubts whether they could. Moreover, although the Court does not doubt the veracity of the affidavits or the sincerity of the members of the association, merely being a "concerned citizen" does not give one standing to bring a claim against the School Board. *See, Lujan,* 504 U.S. at 572–74, 112 S.Ct. at 2143.

The Court is aware of only two school desegregation cases in which courts have addressed the issue of a special-interest association's standing to sue on behalf of school children. Each court went a different way. In *Parents for Quality Educ. v. Ft. Wayne Comm. Schools,* 662 F.Supp. 1475, 1478–1479, (N.D.Ind.1987), the court found that an association made up of parents had standing to challenge a dual school system. In *Bronson v. Bd. of Educ. of City School Dist. of Cincinnati,* 573 F.Supp. 767, 775–777 (S.D.Ohio 1983), *mandamus denied,* 725 F.2d 682 (6th Cir.1983), the court found that the NAACP (which claimed to represent its members and their children—presumably children in the public schools) did not have standing to challenge a dual school system. In Bronson, the Court seemed concerned primarily with keeping the NAACP from expanding the scope of the litigation. *Id.* The Court had certified a class of present and future Cincinnati school children, and the NAACP sought to intervene as the representative of all school children in the entire county. *Id.* Neither of these two cases engages in a close analysis of the issue and is of little help to the Court in determining whether Citizens Concerned has standing to sue.

Two courts have addressed the issue of a special-interest association's ability to represent a class of school children, and these two courts have also reached opposite results. *See, Coalition to Save Our Children v. State Bd. of Educ.,* 901 F.Supp. 784, 792 n. 17 (D.Del.1995), *affirmed,* 90 F.3d 752 (3rd Cir. 1996) (court appointed association as the representative of a certified class of black school children); *Ga. St. Conf. of Branches of NAACP v. State of Ga.,* 99 F.R.D. 16, 35 (S.D.Ga.1983) (court refused to appoint NAACP as a class representative). The Plaintiffs in the instant action have not sought class certification, and therefore the question of whether Citizens Concerned has standing as a class representative is not at issue in this case.

The Court is also aware of four other cases in which courts have reached the merits of

school desegregation actions brought by special-interest associations on behalf of school children. In three of these cases, the issue of associational standing was never addressed. *See e.g., Milliken v. Bradley,* 418 U.S. 717, 722 n. 2, 94 S.Ct. 3112, 3116 n. 2, 41 L.Ed.2d 1069 (1974); *People Who Care v. Rockford Bd. of Educ.,* 851 F.Supp. 905 (N.D.Ill.1994), *affirmed in part, reversed in part, and remanded,* 111 F.3d 528 (7th Cir. 1997); *N.A.A.C.P. v. Lansing Bd. of Educ.,* 559 F.2d 1042 (6th Cir.1977), *cert. denied,* 434 U.S. 997, 98 S.Ct. 635, 54 L.Ed.2d 491 (1977). In each of these three cases the special-interest association was not the sole plaintiff. School children, suing through their parents and legal guardians, were also joined as plaintiffs. Since these children would have standing to bring suit, the parties to these actions apparently did not bother to raise the issue of associational standing, and none of these courts addressed the issue. In fact, the Supreme Court in *Milliken* specifically noted that the issue of the NAACP's standing as a proper party plaintiff had not been contested. *Milliken, supra,* at n. 2. In the fourth case, *Jacksonville Branch, NAACP v. Duval County School Board,* 883 F.2d 945, 953 n. 4 (11th Cir.1989), the court briefly rejected the school board's contention that the NAACP did not have standing to sue regarding racial discrimination in student assignments to programs for exceptionally intelligent children since none of its members who testified at trial had children in those programs. The court noted that "[t]o have standing, an association is required only to allege injury to its members." *Id.* The court did not engage in any analysis of whether the NAACP's members had suffered an injury, and it does not appear that the NAACP's standing to bring the suit at all was ever raised. The court merely rejected the obviously meritless argument that an association's standing depends on who testifies at trial. *Id.* In the instant case, however, the School Board has directly raised the issue of associational standing, and these four cases in not addressing the issue do not guide the Court one way or another.

Finally, in every major school desegregation case that the Supreme Court has ruled on (save for *Milliken, supra,* in which the Supreme Court specifically noted the lack of any controversy as to the NAACP as a proper party plaintiff) the plaintiffs were usually parents or school children, represented by their parents or legal guardians as next friends, bringing suit on behalf of a class. *See e.g., Brown v. Board of Education* (I), 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (minor plaintiffs in class action); *Brown v. Board of Education* (II), 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) (minor plaintiffs in class action); *Griffin v. Prince Edward County School Bd.,* 377 U.S. 218, 225, 84 S.Ct. 1226, 1230, 12 L.Ed.2d 256 (1964) (school children in class action); *Green v. New Kent County School Board,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968) (minor plaintiffs in class action, see, 382 F.2d 338 (4th Cir.1967)); *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) (individual minor plaintiffs, *see,* 369 F.2d 29 (4th Cir.1969)); *Keyes v. School District No. 1, Denver, Colorado,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973) (parents of children attending public schools sued individually, and on behalf of their minor children, and on behalf of class of persons similarly situated); *Milliken v. Bradley,* 418 U.S. 717, 722, n. 2, 94 S.Ct. 3112, 3116 n. 2, 41 L.Ed.2d 1069 (1974) (parents and children in class action, along with the NAACP whose standing as a proper party plaintiff was not challenged, see discussion, supra); *Missouri v. Jenkins,* 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990) (originally an action filed against the state on behalf of school children by their parents and by the Kansas City school board), *see,* 460 F.Supp. 421, 442 (W.D.Mo. 1978); *Board of Education of Oklahoma City v. Dowell,* 498 U.S. 237, 239–41, 111 S.Ct. 630, 633, 112 L.Ed.2d 715 (1991) (class action brought by school children and their parents); *Freeman v. Pitts,* 503 U.S. 467, 471–73, 112 S.Ct. 1430, 1436, 118 L.Ed.2d 108 (1992) (minor school children and their parents in class action).

There is no indication in the case law that associational plaintiffs are anything but a rare occurrence in school desegregation cases. Only two courts have directly addressed the issue in the context of school

desegregation cases, and they each reached a different result. *See* discussion *supra.* This dearth of case law on the issue in an area of law which has been vigorously litigated for forty years may be because the plaintiffs in school desegregation cases usually seek equitable relief regarding a school board policy, a cause of action which generally requires only one appropriately situated plaintiff, making an association's claim for equitable relief redundant. Given the generalized claims that Citizens Concerned seeks to prosecute, claims that are usually pursued in a class action, Citizens Concerned may not be a redundant claimant in the instant action. In either case, the School Board has vigorously contested, as is its right, the standing of Citizens Concerned.

At this, the summary judgment stage of the litigation, Citizens Concerned must "set forth specific facts" to carry its burden of showing it has standing to bring this suit. Fed.R.Civ.P. 56(e); *Lujan,* 504 U.S. at 561–63, 112 S.Ct. at 2137. Under the first prong of Hunt, Citizens Concerned's ability to bring such a claim rises or falls with the ability of its members to bring such a claim. *Hunt,* 432 U.S. at 343–344, 97 S.Ct. at 2441–2442. Citizens Concerned has supplied this Court with a list of people who agree with its aims, affidavits attesting to the association's involvement in community affairs, and newspaper articles written by or about the association and its members. This evidence establishes, as the name of the association suggests, that the members of Citizens Concerned are very concerned about the children who attend Broward County Public Schools. This evidence also establishes that at least one of the members of Citizens Concerned is the parent or legal guardian of a child that attends Broward County Public Schools. The evidence does not establish,

however, that any members of the association have suffered, much less have claimed, an injury in fact that would allow them to have standing to sue in their own right.

The Supreme Court has recently reaffirmed that the first prong of the *Hunt* test is "an Article III necessity for an association's representative suit." *United Food and Commercial Workers,* —— U.S. at ——, 116 S.Ct. at 1535. The failure of Citizens Concerned to establish that it meets this prong is an infirmity that goes to the heart of the constitutional requirement of a case or controversy. Citizens Concerned has failed to set forth sufficient facts to show that its members would, individually, have standing to bring this suit. Therefore, this Court does not have jurisdiction over Citizens Concerned's claims, and the Court will dismiss Citizens Concerned as a Plaintiff in this cause of action.[6] Fed.R.Civ.P. 12(h)(3).

## C. The Standing of the Individual Plaintiffs

Mary Doe and L. Shaq are children in the Broward County public schools who sue in their individual capacity through their parents or legal guardians Jane Doe and J. Shaq, respectively, as next friends. The School Board argues that these individual Plaintiffs' cause of action is moot since the School Board has changed its policies in regards to starbursting and magnet schools. The individual Plaintiffs bring two types of claims, one for damages and one for injunctive relief. The Court will address each claim individually.

### 1. The Mootness of the Equitable Claims for Injunctive Relief

Mary Doe claims that she is a victim of the allegedly racially biased and motivated practice of "starbursting," *i.e.* bussing. *Amended*

---

**6.** This is not the first time that this Court has faced the question of the standing of a special-interest association to bring claims for equitable relief on behalf of non-members. In *Concerned Parents to Save Dreher Park Center v. City of West Palm Beach,* 884 F.Supp. 487, 488–489 (S.D.Fla. 1994), this Court held that an association of parents who were not disabled themselves did not have standing to bring a claim under the Americans With Disabilities Act ("ADA") against the City of West Palm Beach. The Court held that the association could not meet the third

prong of the *Hunt* test for associational standing since any claim under the ADA requires an individual proof and assessment as to that particular person and his disability, something neither the association nor its non-disabled members could provide. *Id.* Whether the special-interest association in *Dreher Park* met the first prong of the *Hunt* test was not at issue in that case. *Id.* In the instant case, since Citizens Concerned has failed to meet the first prong of the *Hunt* test, the Court need not determine whether it has met the third prong.

*Complaint* ¶¶ 10–23. She seeks, *inter alia,* equitable relief from this Court in the form of an order declaring the practice of starbursting to be unconstitutional and enjoining any further use of the practice. *Id.* ¶ 33(a) and (b). L. Shaq claims that she was denied access solely on the basis of her race to a magnet program for which she was otherwise qualified. *Id.* ¶ 24. She also seeks, *inter alia,* declaratory and injunctive relief. *Id.* ¶ 33(a) and (b). The School Board claims that it has ended both the practice of starbursting and the practice of assigning children to magnet programs on the basis of race, and that therefore these claims by the individual Plaintiffs are moot.

■ There must be a case or controversy for this Court to have jurisdiction over a claim. U.S. Const., Art. III § 2. If the School Board has discontinued, as it claims, the practices of which the individual Plaintiffs complain, there would no longer be a case or controversy when it comes to the question of equitable prospective relief. Whether the action is truly moot would depend, in part, on whether the School Board's action is permanent or temporary. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1664–1665, 75 L.Ed.2d 675 (1983). A determination of general mootness would require a broad inquiry into the question of whether the School Board has ended these practices and whether it has done so permanently.

■ The question of whether these claims as related to these particular individual Plaintiffs are moot, however, presents only the narrow issue of standing. *Id.* at 105, 103 S.Ct. at 1667. In order to have standing to seek an injunction, *i.e.* in order to present a case or controversy, each individual Plaintiff must demonstrate that she has a "personal stake in the outcome" of the action, that she has sustained or is "immediately in danger of sustaining some direct injury" due to the challenged conduct, and that such injury is "real and immediate" and not merely "conjectural." *Id.* at 101, 103 S.Ct. at 1665 (citations omitted).

If the claims are truly moot as the School Board maintains, then no plaintiff could bring a claim for prospective equitable relief.

If, however, the claims are moot only as to these two particular plaintiffs, then only these two plaintiffs are barred for lack of standing from bringing a claim for prospective equitable relief Since the Court will decide this matter on the narrow grounds of standing and hold that Mary Doe and L. Shaq do not have standing to bring these claims for injunctive relief since as to them the claims are moot, the Court will not reach the broader question of the general mootness of the claims themselves. Therefore, the Court will not reach the vigorously contested question of whether the School Board has ended starbursting and race-based magnet program assignments.

### a. Standing as to L. Shaq and the Claim Regarding Magnet Programs

■ L. Shaq claims that she was denied entrance to a magnet program solely on the basis of her race, and asks the Court to declare race-based entrance policies to be unconstitutional and to enjoin such practices. L. Shaq, however, is presently attending the magnet International Studies program at Hallandale High School. *L. Shaq Deposition* at 32. Prior to entering the magnet program, L. Shaq did attend Miramar High School for approximately a month after completing middle school because she had been rejected, allegedly on the basis of her race, for the TV Productions/Communications and Broadcasting Magnet Program at Hallandale High School. *L. Shaq Dep.* at 32–35; *J. Shaq Dep.* at 31. But, she applied again to the Communications and Broadcasting magnet program while she was at Miramar, and was accepted. *L. Shaq Dep.* at 38–39; *J. Shaq Dep.* at 34.

L. Shaq successfully completed her ninth grade at Hallandale in that magnet program. *L. Shaq Dep.* at 45. Over the course of her ninth grade year L. Shaq became disenchanted with the Communications and Broadcast magnet program and its lack of equipment, but stayed with it for another year. *L. Shaq Dep.* at 51, 57–58; *J. Shaq Dep.* at 45–46, 118–120. Before her junior year L. Shaq dropped out of the Communications and Broadcast magnet program and enrolled in

the International Studies magnet program.[7] *L. Shaq Dep.* at 67. L. Shaq is now in the second semester of her junior year and is looking forward to going to college. *Id.* at 71–72, 77; *J. Shaq Dep.* at 36.

The Plaintiff L. Shaq has not demonstrated that she has met the standing test of *City of Los Angeles, supra,* for injunctive relief. L. Shaq seeks both a declaration by this Court that her rejection at the Hallandale High School magnet program two and a half years ago was unconstitutional, and an injunction whereby the Court would enjoin the School Board from engaging in such race-based policies. L. Shaq, however, does not have a personal stake in the outcome of this litigation since she is faced with no immediate or sustained injury that could be remedied by an injunction. L. Shaq was admitted to the Communications and Broadcasting magnet program at Hallandale High School after spending approximately a month at Miramar High School. If L. Shaq has stated a cognizable claim for the delay in admitting her to the magnet program at Hallandale, it is a legal claim for damages and not an equitable claim for injunctive relief.

Even assuming that L. Shaq has a heretofore unstated desire to switch to another magnet program with only one year left in her high school career, and assuming moreover that she is likely to be denied the transfer on the basis of her race, such a speculative threat is not sufficiently "real and immediate" such that this Court could find an existing controversy. *City of Los Angeles,* 461 U.S. at 101–102, 103 S.Ct. at 1665. Without a showing that she is "realistically threatened by a repetition" of a race-based denial to entrance in a magnet program, L. Shaq is not entitled to an injunction in federal court. *Id.* at 109, 103 S.Ct. at 1669; *see also, DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). The Court will dismiss L. Shaq's equitable claim regarding the race-based as-signments to magnet programs. Fed. R.Civ.P. 12(h)(3).

**b. Standing as to Mary Doe and the Claim Regarding Starbursting**

■ Mary Doe claims that she was and is subject to the allegedly racially biased and motivated practice of starbursting. *Amended Complaint* ¶¶ 10–23. She too seeks declaratory and injunctive relief.

Mary Doe is presently a sixth grade student at Sunrise Middle School. *M.Doe Dep.* at 10. From first to fifth grade she attended Edgewood Elementary School, allegedly under the School Board's starbursting program. *Id.* at 11–13. This is all the relevant information the Court has been given about Mary Doe.

As the Court has discussed *supra,* the plaintiff bears the burden of establishing a case or controversy. Mary Doe has failed to "set forth specific facts" to establish that she is currently subject to starbursting at Sunrise Middle School or that there is an imminent threat that she will be. She has alleged that she was subject to starbursting from first through fifth grade when she was at Edgewood Elementary School. *Id.* Like L. Shaq, however, any claim that Mary Doe has for injuries suffered in the past goes to the issue of legal, and not equitable, remedies. Absent a showing by Mary Doe that she is "immediately in danger of sustaining some direct injury" from the practice of starbursting, she does not have standing to bring a claim for injunctive relief. *City of Los Angeles,* 461 U.S. at 102, 103 S.Ct. at 1665 (citations omitted).

The Court will dismiss Mary Doe's equitable claims regarding starbursting. Fed. R.Civ.P. 12(h)(3).

**c. Standing as to Both Individual Plaintiffs and Their Generalized Claims for Equitable Relief**

Paragraphs 25–30 of the Amended Complaint set out generalized claims of discrimi-

---

7. It is not clear whether L. Shaq had been enrolled in the International Studies program all along and merely dropped Communications and Broadcasting, or whether she actually had to reapply to enroll in the International Studies magnet program. *L. Shaq Deposition* at 67–68. L. Shaq herself is not sure. *Id.* Her father, J.

Shaq, also does not recall. *J. Shaq Deposition* at 23. In any case, she was not denied access to the International Studies magnet program her junior year. Any denial would have happened early in her ninth grade career at the same time she had been denied access to the Communications and Broadcasting magnet program.

nation regarding, *inter alia,* the substandard school buildings, curriculum, activities, etc. allegedly found in traditionally black schools, as well as claims regarding racial discrimination in the hiring and assignment of faculty and staff.[8] As discussed *supra,* the organization Citizens Concerned About Our Children does not have standing to bring these claims. This leaves the individual Plaintiffs as the only vehicle by which these claims can be brought before this Court. None of the Parties, however, has directly addressed the issue of whether these two individual Plaintiffs have standing to bring these generalized claims. The School Board seems to assume in its briefs that these general claims are brought by Citizens Concerned, and that the specific claims regarding starbursting and magnet programs are brought by the individual Plaintiffs. This assumption is not without reason given the confusing manner in which the Plaintiffs have chosen to plead this action. Even the Plaintiffs seem to make the same assumption in responding to the School Board's arguments and do not address the issue of the standing of the individual Plaintiffs to bring these generalized claims.

Given the confusion surrounding the issue, the Court will reserve ruling on the matter and will require the Parties to file supplemental briefs on the issue of whether the individual Plaintiffs have standing to bring the generalized claims found in Paragraphs 25–30 of the Amended Complaint. The Parties should also address the issue of whether, absent class certification, these individual Plaintiffs may challenge School Board policies and practices regarding schools other than their own.

A showing of standing, however, is a threshold issue and is not the final hurdle the individual Plaintiffs must clear before going to trial. They must also "set forth specific facts" pursuant to Rule 56(e) establishing that there is a genuine issue of material fact that the School Board acted with intent to discriminate. *Board of Educ. of Oklahoma City P. Sch. v. Dowell,* 498 U.S. at 249–50, 111 S.Ct. at 638; *Washington v. Davis,* 426

U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976). In their briefs on the motions for summary judgment, the Parties concentrated their efforts on the issues of standing. They did not address, except incidentally, the intentional discrimination requirement. Therefore, the Court will require further briefing on this matter as well.

### 2. The Mootness of the Individual Plaintiffs' Legal Claims for Damages

The individual Plaintiffs' claims for damages in regards to magnet programs and starbursting meet the Article III requirements for standing. L. Shaq and Mary Doe have set forth specific facts showing that they have suffered an injury in fact causally connected to the School Board's actions, and that this injury can be redressed by a favorable decision. *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136.

Whether the School Board has ended starbursting and race-based magnet program assignments is irrelevant to the individual Plaintiffs' claims for damages. They still, however, must show intentional discrimination on the part of the School Board, and as in the equitable claims discussed *supra,* the Parties will be required to submit further briefs on this issue.

### III.  CONCLUSION

It is important to note what this Order holds and what it does not hold. This Order does not reach the merits of the case. This Order holds only that Citizens Concerned does not have standing to bring any claims, and that the individual Plaintiffs do not have standing to bring claims for equitable relief as to the magnet programs and starbursting.

It is also important to note where this case fits in the history of Broward County school desegregation. Since *Brown v. Board of Education* I and II, *supra,* federal courts have taken an active role in ensuring that formerly segregated school districts integrate with "all

---

**8.** The Plaintiffs also bring generalized claims regarding school assignments and boundary lines. To the extent that these claims include claims regarding magnet program assignments and star-

bursting, the individual Plaintiffs would not, for the reasons stated *supra,* have standing to bring these claims.

deliberate speed" as required by those two Supreme Court decisions. The right of any child to attend a desegregated school is no longer controversial. The remedy, however, is. School boards around the country, including those not under any federal court order, have relied on bussing (referred to as "starbursting" in Broward County), magnet schools, and majority-to-minority transfers in an effort both to achieve integration and to stem the flow of whites to the suburbs.

As the history of this litigation demonstrates, these attempted remedies and sweeteners have had the effect of angering both black and white parents. Each group, unhappy with the Broward County School Board's decisions on these matters, has come to federal court seeking a court order enjoining the particular practice they oppose and requiring the particular practice they support. Each time the Court is whipsawed between competing interest groups that claim to speak for black parents or white parents, and is asked to make decisions that are best left to elected officials. And, each time the proposed remedy is different and is closely tied to the prevailing philosophy of the day regarding racial integration and the schools. This pattern of repetitive litigation relying on newly adopted theories of racial integration suggests that there may be no end to these types of suits.

For this Court to once again issue injunctive remedies against the School District, the Plaintiffs in this cause of action will have to meet their burden of showing intentional discrimination on the part of the School Board. At some point the past wrong of *de jure* segregation is remedied. This Court has declared twice now that the Broward County School District is unitary. The Court does not doubt that the public schools of Broward County bear, like almost every other institution in America, the imprint of societal segregation. We live in separate neighborhoods determined not by law, but by wealth. The economic barriers to entry into the mostly white neighborhoods of western Broward County are insurmountable by many blacks. But, absent a showing by the Plaintiffs of intentional discrimination on the part of the School Board, this Court cannot step in and

craft injunctive remedies regarding the racial mix of the Broward County Public Schools.

THE COURT has considered the Motions and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that

1. The Defendant's Motion for Summary Judgment as to Plaintiff Citizens Concerned About Our Children [DE-107] be, and the same is hereby, GRANTED. Citizens Concerned About Our Children is hereby dismissed from this cause of action for lack of standing.

2. The Defendant's Motion for Summary Judgment as to All Plaintiffs on the Basis of Mootness [DE-106] be, and the same is hereby, GRANTED IN PART. The Court holds that L. Shaq does not have standing to pursue her claims for equitable relief in regards to race-based magnet program assignments. The Court holds that Mary Doe does not have standing to pursue her claims for equitable relief in regards to starbursting. Both L. Shaq and Mary Doe have standing to bring their claims for legal damages.

3. The Court will reserve ruling on the Defendant's Motion for Judgment on the Pleadings [DE-105].

4. The bench trial set to begin on June 9, 1997, is hereby canceled. Trial will be reset after the Court disposes of the issues on which it has reserved ruling.

5. The Parties have until May 30, 1997, to file supplemental briefs on the following issues:

a. Do L. Shaq and Mary Doe have standing to bring the generalized claims of Paragraphs 25-30 of the Amended Complaint? Absent class certification, can Mary Doe and L. Shaq proceed on these claims as they relate to schools other than those which they attend?

b. Have the Plaintiffs met their burden of proof under Rule 56(e), i.e. have they "set forth specific facts" showing that there is a genuine issue of material fact as to the School Board's intent to discriminate in engaging in the policies and practices complained of by the Plaintiffs.

The Parties should cite to specific portions of the record.